[Crim. No. 1775. Second Appellate District, Division One.—May 23, 1929.]

THE PEOPLE, Respondent, v. SQUIRE GRANVILLE WILKERSON, Appellant.

Willedd Andrews for Appellant.

U. S. Webb, Attorney-General, John L. Flynn, Deputy Attorney-General, and John D. Richer for Respondent.

HOUSER, J.—On conviction of the offense commonly known as that of contributing to the delinquency of a minor, defendant was sentenced to a term of eighteen months in the county jail. He appeals from the judgment.

Subdivision 11 of section 1 of the Juvenile Court Law (Stats. 1915, p. 1225, as variously amended), contains the provision that it shall apply to one "who is leading, or from any cause is in danger of leading, an idle, dissolute, lewd or immoral life"; and by section 21 of the same act, among other things, it is provided that "any person who shall commit any act or omit the performance of any duty, which act or omission causes or tends to cause or encourage any person under the age of twenty-one years to come within the provisions" of the statute, shall be guilty of a misdemeanor.

The information under which defendant was prosecuted charged that he "did wilfully and unlawfully commit acts and omit duties hereinafter more particularly set forth, to-wit: That the said defendant Squire Granville Wilkerson did wilfully and unlawfully encourage and allow one Virginia Myers to evade the officers and to hide away from her parents and her probation officer and the police, and to go to Tia Juana to marry the said Squire Granville Wilkerson, a colored man, contrary to the law of California, the said Virginia Myers being a white girl, and a ward of the court and under the age of twenty-one years, to-wit, of the age of eighteen years; the said Squire Granville Wilkerson having been warned to stay away from the girl by her father and her probation officer, and the juvenile police.

"All of which wilful and unlawful acts and course of conduct on the part of the said defendant Squire Granville Wilkerson, as aforesaid did thereby then and there manifestly tend to and did encourage, cause and contribute to the said Virginia Myers becoming and remaining such a person as is described in section 1 of said Juvenile Court Law, to-wit: A person under twenty-one years of age who is leading, or is in danger, from any cause, of leading an idle, lewd, dissolute and immoral life."

An examination of such information discloses the fact that the several alleged acts of defendant, through and by which he is charged with contributing "to the said Virginia Myers becoming and remaining . . . a person who is leading, or is in danger, . . . of leading an idle, lewd, dissolute and immoral life," are that he did wilfully and unlawfully encourage and allow the "ward

(1) ''to evade the officers and hide away from her parents, her probation officer and the police; and

(2) ''to go to Tia Juana to marry the said Squire Granville Wilkerson, a colored man, . . . the said Virginia Myers being a white girl, . . . having been warned to stay away from the girl by her father, her probation officer and the juvenile police.''

The information contains no allegation in explanation of the reason why the girl was ''a ward of the court,'' or as to the nature of the guardianship of which she was the subject. For aught that appears, she may have been a ''ward'' by reason of her insanity, or her feeble-mindedness; or because of her nonage and consequent legal inability to administer her property interests; or, by inference only, because of some moral or other delinquency, possibly she may have been a ward of the juvenile court. If within the last-named category, the information is silent as to whether by order of the court she was detained in custody of the juvenile court officer, or had been released therefrom; and if the latter condition prevailed, what terms and conditions, if any, had been prescribed by the court in connection therewith. Considering only that she was ''a ward of the court . . . of the age of eighteen years,'' it was her right, if she chose to do so, to ''evade the officers'' or to ''hide away from her parents;'' in fact, if unconditionally a ward of the juvenile court, it is manifest that the parents of the girl were legally entitled to no control over her. Being a white woman, according to our statutes it would have been unlawful for her to have married a negro in this state (secs. 60 and 69, Civ. Code); but it is not here suggested or intimated that any legal obstacle prevented the consummation of a marriage between the girl and defendant in the republic of Mexico, even though, as alleged in the information, defendant was ''warned to stay away from the girl by her father and her probation officer and the juvenile police.'' Parenthetically, it may be observed that just what proper place such an allegation as that to which reference has just been had would have in the information, or what legal purpose was expected or hoped to be subserved thereby, is not clear.

In the premises, it is manifest that if, based on the allegations contained in the information, no legal restrictions

were placed upon the conduct of Virginia Myers with reference to the particulars noted therein, and to which reference has been had, it would not be unlawful for defendant to encourage her to do those things. Nor is it readily discernible how such acts could possibly have caused the "ward" to lead an idle, a dissolute, a lewd or an immoral life.
But even conceding the possibility that in a proper pleading any of such acts would or might have such a tendency, the record contains not even the slightest evidence that defendant committed any of the acts of which he is charged. From the transcript of the record it appears that, following the disappearance of the girl from her home, defendant was informed that the parents of the girl and the probation officers were endeavoring to locate her, and that with such assumed knowledge, at the earnest solicitation of the girl, defendant took her to Tia Juana, Mexico, and there married her; which act, in itself, was of no different legal consequence than though the marriage of the parties (if lawful) had occurred at any place within the county of Los Angeles. But even if such act on the part of defendant could be construed as illegal, it is impossible by any stretch of the imagination to classify it as immoral, or as having a tendency to reduce the girl to the state of an idle, a lewd, or a dissolute person. Theoretically, at least, even in this day and generation, the law regards marriage favorably and with some degree of reverence and sanctity. Nor was any evidence introduced or offered on the trial of the action by which the patent and vital defects in the information might have been remedied. The most that appeared in the evidence against defendant was that Virginia Myers, "a ward of the court," of the age of eighteen years, living with her parents, disappeared from her home on a certain date; that thereupon a warrant was issued for her arrest, of which defendant had cognizance and promised to aid the several officers in locating her whereabouts; notwithstanding which he took her to Tia Juana and there was legally married to her. Although on this appeal it is not contended by respondent that because defendant was a colored man, the offense of which he was charged became the more flagrant or heinous, the fact that he is a negro is emphasized in the information and was dwelt upon in the evidence. However, as stated by the judge of the trial court at the conclusion of

the trial, "the marriage is just an incident, the color of these people is just an incident; it would not make any difference whether one was black and one white, or whether both were white or both black."

 It appears that when the case was called for trial, the attorney for defendant made the statement that "we desire to waive a jury and ask that the case be tried by the court." Defendant personally made no such request. Thereupon, the case went to trial by the court sitting without a jury. Although the point is not here raised by appellant, it is apparent that under the provisions of section 7 of article I of the Constitution, as amended in 1928, the waiver of a jury trial must be manifested by "the consent of both parties, expressed in open court by the defendant and his counsel." (*People* v. *Garcia*, 98 Cal. App. 702 [277 Pac. 747].)

As the record is entirely wanting and insufficient either for the purpose of stating the commission of a public offense, or supplying the evidence necessary to support a verdict even on a legal charge, it is ordered that the judgment be and it is reversed and the cause remanded to the superior court for such further proceedings as may be consistent with this opinion.

Conrey, P. J., concurred.

York, J., concurred in the judgment.