Filed 10/28/21  P. v. Boyer CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C090654 |
| Plaintiff and Respondent, | (Super. Ct. No. 15F05020) |
| v. | |
| SCOTT DALLAS BOYER, | |
| Defendant and Appellant. | |

In a court trial, defendant Scott Dallas Boyer was found guilty of second degree murder and a deadly weapon enhancement was found true.  On appeal, he argues:  (1) he did not knowingly and intelligently waive his right to a jury trial; and (2) defense counsel did not consent to the jury waiver, rendering it invalid.  We affirm.

1

# I. BACKGROUND[1]

An amended information alleged defendant committed murder (Pen. Code, § 187, subd. (a)) and personally used a deadly and dangerous weapon in the commission of the offense (Pen. Code, § 12022, subd. (b)(1)).  Defendant pled not guilty.

On the morning scheduled to start jury selection, defense counsel informed the court that defendant was contemplating a court trial, rather than a jury trial.  The trial court informed defendant "you have the right to a speedy and public jury trial.  A jury trial is 12 people from the community, a diverse cross section of the community, and you would have the right to, at both the bench and jury trial, you have the right to cross-examine witnesses and present evidence, and you have the right to remain silent.  So you have all of those same rights at both types of trials.  At a jury trial, the People, represented by [Assistant District Attorney (ADA)], would have to prove your guilt beyond any reasonable doubt and convince all 12 jurors.  So if one juror—if 11 jurors felt that you were guilty, let's say, of first-degree murder, but one juror did not, then you would not have that.  There wouldn't be a unanimous finding as to first-degree murder. [¶]  Whereas with a bench trial, it's just me.  So now [ADA] instead of having to convince 12 individuals, just has to convince one individual, me.  So I just want to make sure you understand the dynamics of the difference between a jury trial and a bench trial, you have had a chance to think about it, and that you're really certain that you want a bench trial because it's an important decision.  This is as serious a case as they come."

Defendant affirmed he wanted to have a court trial.  And the following exchange ensued:

"THE COURT:  Okay.  Do you want some additional time to talk to your lawyer, or do you feel like you have already discussed it with her?

---

[1] The substantive facts underlying defendant's conviction are not relevant to the issues raised on appeal and are therefore, not recounted.

"THE DEFENDANT: I feel like I have already discussed it with her.

"THE COURT: If you had some additional time, do you think it would—that it might change your mind?

"THE DEFENDANT: No, I don't think so.

"THE COURT: Okay.

"THE DEFENDANT: I trust the judge to do the right thing in my case versus 12 people who don't know me or the law or whatever.

"THE COURT: Well, I don't know you.

"THE DEFENDANT: But you have had time to review my case.

"THE COURT: I really don't know anything other than the charge. I'm going to hear the evidence the same way that the jury will. I'm going to have an open mind, just like I would instruct the jury to have an open mind. I will faithfully follow the law, just like I would instruct the jury to. I'm not coming in with any prior knowledge. I'm going to have an open mind, I'm going to listen to the evidence, and I'm going to find the facts based on the evidence in a fair-minded and impartial way, and that is exactly what I would instruct all 12 members of the jury to do and I will faithfully apply it to the law, just as the jury would.

"THE DEFENDANT: That sounds good to me, what you just said. But I think that you have a better understanding of how to do that than they would; all the things you just said you would do. I believe that you probably have a better idea of how to do that than they do.

"THE COURT: All right.

"THE DEFENDANT: I'm going with who I think is the smartest to adjudicate my case.

"THE COURT: Okay. Well, I'm glad you have that confidence in me, but I'm not sure that that is going to be true. [¶] You have this constitutional right to a jury trial.

3

Are you saying that you understand your right to a jury trial and you understand what a jury trial is, and you're waiving that right?

"THE DEFENDANT: Yes.

"THE COURT: All right. [¶] [Defense counsel], are you wanting any additional time, or do you believe that he understands his right to a jury trial?

"[DEFENSE COUNSEL]: Your Honor, this situation, [defendant] brought it up for the first time his wish yesterday to have a court trial. We spoke about it. I essentially told him the same thing you told him just moments ago and more. I spoke—I told him to think about it overnight. I did not want him to have already made that decision without reflecting on my advice. [¶] So when I spoke with him this morning, he indicated to me that after considering what I said he still wanted the court trial. And then I spoke with him just before you took the bench this morning again about it, and brought up some other points that I had not made before, and even after that [defendant] still indicated that he wanted a court trial.

"THE COURT: Okay. [¶] [ADA], what is the People's position as to whether the People would want a jury trial or agree to a bench trial?

"[ADA]: The People are prepared to agree with a bench trial, Judge.

"THE COURT: All right. [¶] [Defendant], is that your final decision that you want a bench trial?

"THE DEFENDANT: Yes, Your Honor.

"THE COURT: All right. So I will find that you've made a knowing and intelligent waiver of your constitutional rights to a jury trial, and the trial will proceed as a bench trial." Defense counsel continued representation of defendant throughout the court trial.[2]

---

[2] After trial, defense counsel went on leave for reasons not disclosed in our record on appeal. She was not back from leave at the time of sentencing.

The trial court found defendant guilty of second degree murder and found the deadly weapon allegation true. The trial court sentenced defendant to an indeterminate term of 15 years to life, plus a consecutive one-year term on the deadly weapon enhancement.

## II.  DISCUSSION

### A.    *Jury Trial Waiver*

Defendant contends his jury waiver was invalid, as his waiver was not knowing, intelligent, and voluntary. He argues because the trial court did not give all the advisements recommended in *People v. Sivongxxay* (2017) 3 Cal.5th 151 (*Sivongxxay*), specifically that he could participate in the selection of the jury with the assistance of counsel, his waiver was not voluntary. Defendant also claims we should evaluate the adequacy of the advisements in light of his mental illness and that counsel's statements indicated she was advising defendant against waiving his right to a jury trial. We are not persuaded.

A criminal defendant has the constitutional right to a jury trial. (*Sivongxxay, supra*, 3 Cal.5th at p. 166; U.S. Const., 6th Amend.; Cal. Const., art. I, § 16.) That right may be waived, provided the waiver is " 'knowing and intelligent, that is, " ' "made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it," ' " as well as voluntary " ' "in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." ' " ' [Citations.] '[W]hether or not there is an intelligent, competent, self-protecting waiver of jury trial by an accused must depend upon the unique circumstances of each case.' " (*Sivongxxay, supra*, at p. 166.)

Our Supreme Court provided guidance as to the basic advisements that the trial court should give in a waiver colloquy, including: "that (1) a jury is made up of 12 members of the community; (2) a defendant through his or her counsel may participate in jury selection; (3) all 12 jurors must unanimously agree in order to render a verdict; and

5

(4) if a defendant waives the right to a jury trial, a judge alone will decide his or her guilt or innocence." (*Sivongxxay, supra*, 3 Cal.5th at p. 169.) But, the court's guidance in *Sivongxxay* was advisory and "not intended to limit trial courts to a narrow or rigid colloquy." (*Id.* at p. 170.) And, our high court has "persistently declined to mandate any specific admonitions describing aspects of the jury trial right." (*People v. Daniels* (2017) 3 Cal.5th 961, 992 (conc. & dis. opn. of Cuéllar, J.); see *Sivongxxay, supra*, at p. 167.) The test of a valid waiver turns not on whether specific warnings or advisements were given, but on whether the record affirmatively shows that the waiver is voluntary and intelligent under the totality of the circumstances. (*Sivongxxay, supra*, at pp. 166-167.)

Here, at the time defendant waived his jury trial right, he was represented by counsel, was aware of his right to a jury trial, and had discussed waiving that right with counsel. The trial court advised him that a jury consisted of 12 people from the community, that all 12 of the jurors would have to unanimously agree beyond a reasonable doubt that he was guilty, and with a court trial, the judge alone was deciding his guilt or innocence. Although the trial court did not explain every detail of the respective choices and compare them, it was not obligated to advise a represented defendant about " 'all the ins and outs' " of a jury trial (*People v. Wrest* (1992) 3 Cal.4th 1088, 1105), or the relative advantages or disadvantages of the types of trials (*People v. Castaneda* (1975) 52 Cal.App.3d 334, 344; *People v. Acosta* (1971) 18 Cal.App.3d 895, 902). In addition to the trial court's advisements, defendant had multiple conversations with his trial counsel that included more information about his right to a jury trial. Defendant initiated the request to waive a jury trial, indicating to his counsel the day before jury selection, that he wanted to have a court trial rather than passively agreeing. (*Sivongxxay, supra,* 3 Cal.5th at p. 167.) Defense counsel advised him of the same information the trial court had provided, "and more." She also told him to consider the information and advice she had given overnight. After considering counsel's advisements overnight, defendant continued to state he wanted a court trial. Counsel

raised some additional points, and defendant remained steadfast that he wanted a court trial.

There is nothing on this record that suggests defendant was confused as to his right to a jury trial or that he did not knowingly and intelligently waive that right. Further, in her multiple conversations with defendant about a court trial, there is no indication that counsel failed to adequately advise defendant of the basic mechanics of a jury trial, the fundamental differences between a jury trial and a bench trial, or the consequences of waiving a jury trial in lieu of a bench trial. (*People v. Roles* (2020) 44 Cal.App.5th 935, 949-951.) To the extent counsel's statements indicate her opinion on the matter, and we do not believe they necessarily do, counsel did not indicate any objection or any reservations about the waiver on the record.

Finally, defendant's claims regarding mental illness impacting the validity of his waiver are unavailing. "[T]he mere presence of a mental illness does not mean appellant was unable to understand the proceedings or assist in his own defense. (*People v. Laudermilk* (1967) 67 Cal.2d 272, 285.)" (*People v. Smith* (2003) 110 Cal.App.4th 492, 502.) To the contrary, "many persons who suffer from mental illness or related disorders can understand the nature of legal proceedings and determine their own best interests." (*People v. Blackburn* (2015) 61 Cal.4th 1113, 1128; see *Conservatorship of John L.* (2010) 48 Cal.4th 131, 154 ["it may not be presumed that . . . one who has been evaluated or treated for a mental disorder [] is incompetent to waive [trial] rights"].) There is no evidence defendant had any problems understanding or participating in the proceedings or did not understand the questions asked or the explanations given. Accordingly, we will not presume any mental illness precluded him from having a meaningful understanding of the rights he was waiving. Considering the totality of the circumstances, the record in this case affirmatively shows defendant knowingly and intelligently waived his right to a jury trial.

*B.*     *Defense Counsel Consent*

Defendant contends counsel did not consent to the jury trial waiver, rendering it invalid.  He claims her consent was not implicit, as her summary of her interactions with defendant indicated she had advised him against waiving his right to a jury trial.

"[W]here an express waiver has been received from the defendant, the acquiescence of defense counsel and the prosecutor will be given effect as implied waivers.  It is only the waiver of the defendant himself that must be expressed in language." (*People v. Evanson* (1968) 265 Cal.App.2d 698, 701.)  "[I]f the defendant unequivocally expresses his waiver of a jury trial in the presence of his counsel and his counsel thereafter continues to represent him throughout the trial without indicating any objection, then his counsel has in effect joined in the waiver." (*People v. Brooks* (1957) 154 Cal.App.2d 631, 634.)  Where defense counsel states on the record that the waiver is against her advice, there is no implied consent to the waiver. (*People v. Peace* (1980) 107 Cal.App.3d 996, 1008.)

Like in *Evanson* and *Brooks*, defense counsel remained silent and acquiesced to the proceedings after defendant made his express waiver.  Defense counsel did not object to defendant's waiver (*People v. Upshaw* (1974) 13 Cal.3d 29, 33-34) or explicitly state that the wavier was against her advice.  We are not persuaded by defendant's speculation that counsel's statements on the record indicate defendant's waiver was against her advice.  We do not know what counsel said to defendant, or what her advice was.  Her statements on the record simply do not go so far.  Where defense counsel makes no objection or explicit statement indicating the waiver is against her advice, we will not speculate that she had such an objection.  Counsel's continuing representation of defendant throughout the ensuing trial without indicating any objection to defendant's explicit waiver was sufficient to demonstrate her acquiescence to the waiver.  To conclude otherwise would allow a defendant's attorney to take a no position on a defendant's request to waive a jury trial, try the case on that record but then allow

8

defendant to claim on appeal that his or her attorney did not consent. The law does not require that outcome and, on this record, defendant's attorney must be deemed to have consented to the waiver.

## III. DISPOSITION

The judgment is affirmed.


/S/

_____

RENNER, J.


We concur:

/S/

_____

BLEASE, Acting P. J.


/S/

_____

ROBIE, J.